## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

IN RE:

**PHETDAVANH SENGSOURINHO,**

    **Debtor.**

 

**KERI STEWART,**

    **Plaintiff,**

**v.**

**PHETDAVANH SENGSOURINHO,**

    **Defendant.**

**Case No. 25-00358-NGH**

**Adv. No. 25-06045-NGH**

## MEMORANDUM OF DECISION

Keri Stewart ("Plaintiff") initiated the above-captioned adversary proceeding against debtor-defendant Phetdavanh Sengsourinho ("Debtor") in July of 2025. In the complaint, Plaintiff alleges the debt owed to her is excepted from discharge under § 523(a)(2)(A), (a)(4), (a)(5), and (a)(6).[1]  *See* Doc. No. 1.  Debtor filed an answer.  Doc. No. 7.  The Court held a trial on Plaintiff's claims on April 15, 2026, and took the matter

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9038, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

under advisement.  After considering the record, arguments, and applicable law, the

following constitutes the Court's findings,[2] conclusions, and disposition of the issues.

**BACKGROUND**

Debtor and Plaintiff were married until December of 2021 when the state court,

pursuant to the parties' stipulation, entered a Judgment and Decree of Divorce (the

"Divorce Decree").  Ex. 101.  The preamble provides:  "The parties have agreed to

settlement and stipulated that the court enter a judgment and decree according to the

terms announced herein."  As part of the stipulation, the parties waived findings of fact

and conclusions of law.  Sections 2 through 8 of the Divorce Decree set forth the parties'

rights and obligations with respect to their two children.  Section 9 sets forth the division

of community property and debts pursuant to a Property and Debt Schedule attached to

the Divorce Decree as exhibit A (the "Property Schedule").  According to the Property

Schedule, Plaintiff was awarded as her sole and separate property the marital residence,

which Plaintiff purchased prior to the marriage, as well as a 2013 Ford F150, and an ATV

trailer.  Debtor was awarded a 2014 Ford F150, a 2011 Stratos Boat, and an ATV.  With

respect to the 2013 Ford awarded to Plaintiff, the Property Schedule provides that Debtor

"will continue to make the monthly payments on the loan until paid off."  Under

"Community Debts" was a CapEd overdraft line of credit under Plaintiff's account and

one under Debtor's account.  The Property Schedule provides these accounts "will be

paid off and remain open until the 2014 F150 is no longer financed in [Plaintiff's] name

---

[2] The Court does not make findings of fact with respect to arguments or assertions made by the parties as part of their closing arguments.

MEMORANDUM OF DECISION - 2

and the 2011 Stratos Boat is no longer financed in [Plaintiff's] name, due to the debt-to-income ratio." Additionally, Debtor was to pay off the balance of a CapEd credit card that was to remain open until the 2014 Ford and boat were no longer financed in Plaintiff's name. After the parties submitted the stipulation to the state court, the court scheduled a status conference regarding child support that was to occur on December 16, 2021. Ex. 103. However, the state court entered the Divorce Decree on December 8 and closed the case the same day. Thereafter, the state court vacated the December 16 status conference.

Consistent with the parties' agreement, Debtor took physical possession of the assets awarded to him and made payments according to the Property Schedule for some time. Eventually, however, Debtor defaulted on his obligations with respect to the boat, the 2013 Ford, and the credit card.[3] Plaintiff, who remained liable on the underlying debts though she did not hold title to the boat under the Divorce Decree, began receiving collection communications from creditors. Plaintiff eventually obtained personal loans to pay off the loan balances and the credit card. On September 8, 2023, Plaintiff took physical possession of the boat without Debtor's knowledge or consent and paid off the boat loan the next day. Ex. 107. Plaintiff then purported to sell the boat to one of the individuals who had provided a personal loan to Plaintiff. Debtor, upon discovering the boat had been taken, reported the boat as stolen to the police and his insurance carrier. Plaintiff testified that by September 15, 2023, Debtor knew it was Plaintiff who had taken

---

[3] Debtor does not appear to have defaulted on his obligations to pay off the 2014 Ford F150.

MEMORANDUM OF DECISION - 3

the boat because the police informed Debtor he could collect his personal belongings from the boat at the police station.  Plaintiff retained possession of the boat.  The state did not pursue criminal charges against Plaintiff.  The insurance carrier released the boat title to Debtor and contacted Plaintiff regarding the boat.  At some point, the insurance carrier settled the claim with Debtor, and Debtor did not seek to retain possession of the boat from Plaintiff and/or the third-party purchaser.

**ANALYSIS**

Exceptions to discharge are construed liberally in favor of the debtor in order to preserve a debtor's fresh start.  As the party asserting nondischargeability, Plaintiff bears the burden of demonstrating by a preponderance of the evidence that the debt owed to her by Debtor is excepted from discharge.

**A.      Section 523(a)(2)(A) – False Pretenses, False Representation, or Actual Fraud**

Section 523(a)(2)(A) excepts from discharge a debt for money, property, or services to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  Specifically, Plaintiff asserts Debtor obtained money by false representations.  To prove a debt is nondischargeable for false pretenses or a false representation, the creditor must demonstrate:

> (1) the debtor made . . . representations;
> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;

MEMORANDUM OF DECISION - 4

(4) that the creditor relied on such representations; [and]

(5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010) (alteration in original).

Plaintiff failed to meet her burden of demonstrating the debt owed to her is excepted from discharge under (a)(2)(A).  In her pleadings, Plaintiff asserted Debtor made false representations to his insurer regarding the boat.  At trial, Plaintiff asserted Debtor made representations he knew to be false by failing to disclose his obligations under the Divorce Decree and the alleged insurance payment in the schedules and statement of financial affairs filed with the Court.  The record does not reflect, however, that Debtor made false representations to his insurance carrier or in his bankruptcy schedules with the intention and purpose of deceiving Plaintiff.  Additionally, Plaintiff failed to establish that she relied on Debtor's representations, or that she sustained the alleged damage and loss as a proximate result.  The debts Plaintiff seeks to except from discharge arise from Debtor's failure to comply with his obligations under the Divorce Decree, not his dealings with the insurance carrier or his bankruptcy schedules.

**B.      Section 523(a)(4) – Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny**

Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.  Specifically, Plaintiff points to fraud or defalcation in a fiduciary capacity and embezzlement. "Fiduciary capacity" is defined narrowly under (a)(4) and is governed by federal law.  *See Murray v. Woodman*

MEMORANDUM OF DECISION - 5

*(In re Woodman)*, 451 B.R. 31, 38 (Bankr. D. Idaho 2011).  "The broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context. . . . The fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt."  *Id.* (quoting *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1125 (9th Cir. 2003)).  To prove that a debt is excepted from discharge under § 523(a)(4), a plaintiff must establish "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created."  *Otto v. Niles* (*In re Niles*), 106 F.3d 1456, 1459 (9th Cir. 1997).

Additionally, embezzlement in the context of (a)(4) has been defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."  *Transamerica Com. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991) (citing *Moore v. United States*, 160 U.S. 268, 269 (1895)).  Therefore, establishing embezzlement requires a creditor to demonstrate "1) that property was rightfully in the possession of a nonowner, 2) that the nonowner appropriated the property to a use other than for which it was entrusted, and 3) the circumstances indicate fraud."  *Cheirett v. Biggs (In re Biggs)*, 563 B.R. 319, 325 (Bankr. D. Idaho 2017) (citing *King v. Lough (In re Lough)*, 422 B.R. 727, 735 (Bankr. D. Idaho 2010) and *Littleton*, 942 F.2d at 555).

Here, Plaintiff has not met her burden of proving that the debt owed to her is nondischargeable under (a)(4).  Plaintiff has not put forth evidence that an express trust

MEMORANDUM OF DECISION - 6

existed as required for fraud or defalcation in a fiduciary capacity.  And Plaintiff has not demonstrated that Debtor was in possession of property that belonged to another as would be necessary to find the debt was for embezzlement.

### C.      Section 523(a)(5) – Domestic Support Obligation

Next, Plaintiff contends the debt owed to her is excepted from discharge as a domestic support obligation under § 523(a)(5).  The Code defines "domestic support obligation" or "DSO" as a debt that is "owed to or recoverable" by a spouse, former spouse, or child of the debtor; that is "in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child . . . without regard to whether such debt is expressly so designated"; and that arose before, on, or after the order for relief by reason of a "separation agreement, divorce decree, or property settlement agreement."  11 U.S.C. § 101(14A).  "Whether an obligation arising out of a divorce is nondischargeable support under § 523(a)(5) is a question of federal law."  *Seixas v. Booth (In re Seixas)*, 239 B.R. 398, 402 (9th Cir. BAP 1999) (collecting cases).  The labels given to an obligation in a settlement or decree are not conclusive when deciding whether the obligation is in the nature of support.  *See id.*  Rather, bankruptcy courts "must look beyond the language of the agreement, judgment, or decree to the intent of the parties and to the substance of the obligation."  *Id.* (citing *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984)).  Courts consider "the surrounding circumstances and all other relevant incidents bearing on the parties' intent to determine whether the parties intended a particular obligation to be in the nature of child support."  *Id.* at 404 (internal quotation marks omitted) (quoting *Kritt v. Kritt (In re Kritt)*, 190 B.R. 382, 387 (9th Cir. BAP 1995)).

MEMORANDUM OF DECISION - 7

Section 2 of the Divorce Decree provides the parties have joint legal custody of the children and sets forth a shared custody schedule in which each parent is to have equal physical custody.  The Divorce Decree also allows Debtor to claim the minor children as dependents for income tax purposes until Plaintiff remarries or the children are no longer classified as dependents.  "[I]f at a reasonable cost," Debtor was to provide health insurance for the children through his employment.  Section 5 of the Divorce Decree, titled "Child Support," provides:  "Neither parent owes the duty of child support to the other at this time."  As stated above, Plaintiff remained in the marital home and Debtor released all interest in the home.  Under the Property Schedule, each party received a vehicle, and Debtor was awarded two of the parties' three recreational vehicles and the joint credit card debt, which Debtor paid off prior to entry of the Divorce Decree.[4]

As noted, Plaintiff asserts Debtor's payment obligations under the Divorce Decree on the 2013 Ford were intended as child support.  The record before the Court is slim regarding circumstances and other incidents that may bear on the parties' intent at the time of dissolution.[5]  The label assigned by the parties in their settlement agreement, while not necessarily dispositive, does indicate the 2013 Ford truck payment was part of

---

[4] The Property Schedule assigns an "S" to all assets, which appears to mean the asset is separate property as opposed to community property.  The Court does not view these labels as bearing on the true nature of property as it is clear from the record that certain assets were community property despite being labeled otherwise in the Property Schedule.

[5] The inquiry centers on circumstances relevant to what the parties intended at the time the obligation was established.  *See Seixa*s, 239 B.R. at 402.  The parties' subsequent circumstances or conduct do not bear on the Court's analysis.

MEMORANDUM OF DECISION - 8

a property settlement, not support.  Moreover, unlike a situation involving primary physical custody by one parent and visitation by the other, here the parties were awarded equal physical and legal custody of the children, thus negating one factor in awarding child support.  Furthermore, there was no evidence that would suggest support was necessary or appropriate under the circumstances, such as an imbalance in the parties' relative incomes at the time of divorce or other indication that Debtor was liable to Plaintiff for child support.  Additionally, the fact that Debtor's obligation terminated when the loan was paid off is consistent with property equalization, not support.[6]

While Plaintiff contends the parties had an oral agreement that Debtor would make the 2013 Ford truck payments instead of paying child support through the state, this assertion contradicts the plain language of the Divorce Decree and Property Schedule and the substance of the obligation itself.  The evidence of the parties' intent as memorialized in the Divorce Decree and lack of corroborating evidence as to Plaintiff's position impugn Plaintiff's credibility.  Moreover, while Debtor did not testify at trial, he disagreed with Plaintiff's interpretation of their obligations under the Divorce Decree and denied Plaintiff's assertions in his answer and in closing arguments.  To support her position, Plaintiff notes that after the state court entered the Divorce Decree, it vacated a subsequent status conference regarding child support because the court was satisfied with the truck payments as child support.  However, nothing supports this interpretation of the

---

[6] Again, factual assertions raised in closing arguments are not part of the evidentiary record.

MEMORANDUM OF DECISION - 9

court's motive.[7]  The Court does not find Plaintiff's assertion to be persuasive as to the nature of the obligation.  As such, Plaintiff has not met her burden of proving that the debt owed to her is nondischargeable under (a)(5).

### D.       Section 523(a)(6) – Willful and Malicious Injury

Under § 523(a)(6), a debt "for willful or malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable in bankruptcy.  "Both willfulness and maliciousness must be proven to block discharge under § 523(a)(6)." *Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010).   However, not all injuries fall within (a)(6)'s exceptions to discharge; only those that result from willful and malicious *tortious* conduct by the debtor.  *See Lockerby v. Sierra*, 535 F.3d 1038, 1042-43 (9th Cir. 2008).  For example, "[e]ven if a breach of contract is intentional, and a debtor intends to cause injury by breaching the contract, the breach is not, by itself, 'tortious conduct,' and is not excepted from discharge pursuant to § 523(a)(6)." *Bank of Idaho v. Powell (In re Powell)*, 2012 WL 2373405, at *4 (Bankr. D. Idaho June 22, 2012).  To determine whether a debtor's conduct rises to the level of "tortious" for purposes of § 523(a)(6), courts look to state law.  *Id.* (citing *Lockerby*, 535 F.3d at 1041).

Here, Plaintiff failed to establish that Debtor inflicted a willful or malicious injury on Plaintiff.  Plaintiff argues Debtor willfully failed to perform his obligations under the

---

[7] Exhibit 103 is a copy of the state court docket.  There is no indication on the docket of the state court's reason to vacate the status conference, and the Court does not give credence to the handwritten hearsay explaining phone conversations with the court clerk.

MEMORANDUM OF DECISION - 10

Divorce Decree and injured Plaintiff by leaving her liable on the debts and filing a petition for relief.  As noted above, however, to fall within (a)(6) the injury must result from tortious conduct.  Even if Debtor intentionally breached his obligations under the Divorce Decree, Plaintiff did not present sufficient evidence to establish Debtor's conduct rose to the level of being tortious under Idaho law.

**CONCLUSION**

For the reasons set forth above, the Court will dismiss the complaint.[8]  The Court will enter its own judgment.

DATED: May 6, 2026



_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

---

[8] The complaint's prayer for relief also requests a criminal investigation into Debtor's conduct. The Court cannot grant Plaintiff's request as such investigation is not within this Court's domain.

MEMORANDUM OF DECISION - 11